IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Michael I. Goldberg in his capacity as Receiver for M.A.M.C., Incorporated, as Servicing Agent and attorney in fact for the following lenders: Coconut Grove Bank, as custodian of the Forrest Rhea Nichols IRA, as to an undivided 1.308% interest, *et al.*, and Green-East SC Lender, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>C.B. Richard Ellis, Inc. d/b/a CBRE Valuation & Advisory Services,<br><br>    Defendant. | Civil Action No.: 4:11-cv-02237-RBH<br><br><br><br><br><br><br><br><br>**ORDER** |

This lawsuit arises from a dispute between the Plaintiffs, Michael I. Goldberg in his capacity as receiver, servicing agent, and attorney for various lenders ("Plaintiff Lenders"), and the Defendant, CBRE Valuation & Advisory Services ("CBRE"), regrading an appraisal performed by CBRE. Currently pending before the Court is CBRE's Motion to Stay Proceedings and Compel Arbitration. [Doc. #7.] For the following reasons, the Motion is denied.

**Background Facts and Procedural History**

In July 2005, two companies that are not parties to this lawsuit, Atlantic Beach Oceanfront, LLC ("ABO") and Seventh Street Properties, LLC ("Seventh Street"), purchased property in Horry County, South Carolina ("the Property") via financing. Sometime after purchasing the Property, ABO and Seventh Street contacted The Berman Group ("Berman"),[1] a company based out of Coconut Grove, Florida, for assistance in refinancing loans on the Property.

---

[1] Plaintiff identifies "Berman" as the Berman Mortgage Company, while Defendant and the Appraisal Agreement identifies "Berman" as The Berman Group.

Berman, in turn, hired CBRE to prepare an appraisal of the property. On February 15, 2006, CBRE sent an Appraisal Agreement to Berman. The Appraisal Agreement contained the following relevant provisions:

> **Start Date:** The appraisal process will start upon receipt of your signed agreement and the property specific data.
>
> **Acceptance Date:** These specifications are subject to modification if this proposal is not accepted within 2 business days from the date of this letter.

[*See* Doc. #7-2, at 63.] In addition, the Appraisal Agreement also contained the proceeding arbitration clause in its Terms and Provisions:

> In the event of any dispute between Client and Appraiser relating to this Agreement, or Appraiser's or Client's performance hereunder, Appraiser and Client agree that such dispute shall be resolved by means of binding arbitration in accordance with the commercial arbitration rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court of competent jurisdiction. Depositions may be taken and other discovery obtained during such arbitration proceedings to the same extent as authorized in civil judicial proceedings in the state where the office of Appraiser executing this Agreement is located. The arbitrator(s) shall be limited to awarding compensatory damages and shall have no authority to award punitive, exemplary or similar type damages. The prevailing party in the arbitration proceeding shall be entitled to recover from the losing party its expenses, including the costs of arbitration proceeding, and reasonable attorney's fees.

[*Id.* at 65.] Significantly, no one from Berman signed the Appraisal Agreement.

Plaintiff Lenders allege they loaned money to ABO and Seventh Street on the basis of the CBRE appraisal commissioned by Berman. On July 19, 2011, after ABO and Seventh Street subsequently defaulted on their loans, Plaintiff Lenders filed a complaint in South Carolina circuit court alleging negligence against CBRE. Subsequently, CBRE removed the case to this Court, and Plaintiff Lenders filed an amended complaint adding a cause of action for breach of contract. The gravamen of Plaintiff Lenders' case is that (1) as to negligence, CBRE provided an erroneous and

inaccurate appraisal to Berman on which it knew lenders would rely, and that (2) as to breach of contract, CBRE contracted with Berman to provide an appraisal for the benefit of Plaintiff Lenders, as third-party beneficiaries.

CBRE filed the Motion at issue claiming that the Federal Arbitration Act ("FAA") compels arbitration in this case because the Appraisal Agreement constituted a valid contract between CBRE and Berman, and that Plaintiff Lenders are bound to the terms of that contract, including its arbitration clause. On November 28, 2011, this Court conducted a hearing on the Motion where both parties presented arguments.

## Legal Standard

The FAA created a body of federal substantive law applicable in state and federal courts.[2] *Southland Corp. v. Keating*, 465 U.S. 1, 12 (1984) (rejecting the view that state law could bar enforcement of the FAA); *see also* 9 U.S.C. § 1. The Supreme Court has repeatedly emphasized that the FAA represents "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Pursuant to that liberal policy, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25.

However, the FAA dictates only the effect of a contractually agreed-upon arbitration provision, it does not displace state law on the general principles governing formation of the contract itself. *See Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987); *Supak & Sons Mfg. Co. v.*

---

[2] For an arbitration agreement to be subject to the FAA, it must involve interstate commerce. 9 U.S.C. § 2. The parties here do not dispute the general applicability of the FAA to this supposed contract.

*Pervel Indus., Inc.*, 593 F.2d 135, 137 (4th Cir. 1979). *See also R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 160 n.1 (4th Cir. 2004) (applying state law to determine the question of whether nonsignatories to an arbitration agreement subject to the FAA were bound by its provisions); *Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 868 (7th Cir. 1985) (explaining that a challenge based on fraud in the inducement of the whole contract should be decided by an arbitrator, while a challenge based on the lack of mutuality of the arbitration clause would be appropriate for judicial determination).

At the threshold of whether arbitration should be compelled in this case are two issues that implicate the general principles governing contract formation: (1) whether a valid contract containing the arbitration agreement existed between Berman and CBRE; and (2) if such a valid contract existed, whether Plaintiff Lenders, as nonsignatories[3] that are unnamed in the Appraisal Agreement, are bound by its arbitration clause.

## Discussion

The FAA requires "an agreement in writing" for arbitration to proceed. 9 U.S.C. § 3. "[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *AT & T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 648-49 (1986). Although the plain language of the FAA requires the arbitration provision to be written, the overwhelming weight of authority supports the view that a signature is not required to meet the FAA's written requirement. *See, e.g.*, *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005) ("We readily conclude that no signature

---

[3] All parties to this case agree that, even if the Appraisal Agreement constituted a binding contract between Berman and CBRE, Plaintiff Lenders were not signatories to that contract. [*See* Def.'s Mot., Doc. #7-1, at 4; Pls.' Mem. In Opp'n, Doc. #13, at 7-8.]

4

is needed to satisfy the FAA's written agreement requirement."); *Poteat v. Rich Products Corp.* 91 Fed. App'x 832, 834 (4th Cir. 2004) (reversing district court and ordering arbitration where state law did not require a contract to be signed); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 736 (7th Cir. 2002) (enforcing arbitration agreement unilaterally promulgated by employer even though employee never signed it)*; Genesco, Inc. v. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987) (stating that "while the [FAA] requires a writing, it does not require that the writing be signed by the parties"); *Valero Ref., Inc. v. M/T Lauberhorn*, 813 F.2d 60, 62 (5th Cir. 1987) ("It is established that a party may be bound by an agreement to arbitrate even in the absence of his signature.").

Given that the FAA does not require arbitration agreements to be signed, courts look to general principles of state law in determining whether an unsigned contract containing an arbitration provision can still bind a party to its terms. *See Poteat,* 91 Fed. App'x at 834 (4th Cir. 2004). In this case, the Court looks to the substantive law of North Carolina.[4] Under North

---

[4] A federal court sitting in diversity must apply the conflict of law provisions of the forum state. *Thornton v. Cessna Aircraft Co.*, 886 F.2d 85, 87 (4th Cir. 1989). Under the South Carolina choice of law rules governing contract actions, a contract is governed by the laws of the state in which the contract was made. *Livingston v. Atl. Coast Line R. Co.*, 176 S.C. 385, 391 (1935). Here, the supposed contract was mailed from the North Carolina offices of CBRE to Berman's offices in Florida. However, the document sent by CBRE was never signed, and CBRE claims that this supposed contract was accepted when CBRE received payment. [*See* Def.'s Reply, Doc. #15, at 3.] Accordingly, under CBRE's assertion, if a valid contract containing an arbitration clause does exist, it was formed when CBRE received payment in North Carolina. Accordingly, North Carolina law governs the contract claim. This conclusion is further bolstered by the parties' agreement in their pleadings and at oral argument that, as to the contract claim, North Carolina law controls. [*See, e.g.,* Pls.' Mem. In Opp'n, Doc. #13, at 5 ("For purposes of this motion, Plaintiffs will assent that North Carolina law applies . . . ."); Def.'s Reply, Doc. #15, at 2-5 (applying North Carolina law).]

The Court also acknowledges, without deciding, that North Carolina substantive law may not govern Plaintiff Lenders' tort claim. Under South Carolina choice of law rules, courts apply the law of the place where the injury was inflicted. *Dawkins v. State*, 306 S.C. 391, 392, 412

Carolina law, the burden of proving valid contract is upon party seeking to enforce alleged contract. *Orthodontic Ctrs. of Am., Inc. v. Hanachi*, 564 S.E.2d 573, 575 (N.C. Ct. App. 2002). Further, ambiguous provisions are to be construed against the drafting party, *Wood-Hopkins Contracting Co. v. Ports Auth.*, 202 S.E.2d 473, 476 (N.C. 1974), and "[n]o contract is formed without an agreement to which at least two parties manifest an intent to be bound." *Parker v. Glosson*, 641 S.E.2d 735, 737 (N.C. Ct. App. 2007) (citing *Croom v. Goldsboro Lumber Co.*, 108 S.E. 735, 737 (N.C. 1921)). "A written signature is not the exclusive means of signifying acceptance. Acceptance, *unless otherwise specified*, may be communicated by any means sufficient to manifest intent." *Exec. Leasing Assocs. v. Rowland*, 227 S.E.2d 642, 645 (N.C. Ct. App. 1976) (emphasis added).

The record here, including the arguments made during the hearing on the Motion at issue, shows that although CBRE may have sent Berman a proposal that included the arbitration provision, there is insufficient evidence to show that Berman accepted the arbitration provision or intended to be bound by its terms.

First, Berman did not sign the Appraisal Agreement. Although CBRE correctly cited *Executive Leasing* for the proposition that a signature is not required to signify acceptance, the court in *Executive Leasing* explained that acceptance may be communicated in means other than a signature "unless otherwise specified." *Executive Leasing,* 227 S.E.2d at 645. The Appraisal Agreement not only contained the phrase "AGREED AND ACCEPTED" in bold, all-capital letters

---

S.E.2d 407, 408 (1991). In the case at bar, Plaintiff Lenders' negligence claim centers around an appraisal performed by CBRE, a North Carolina company, on property located in South Carolina.

above the signature block for Berman, but it stated plainly on page one that the appraisal process would begin upon "receipt of your signed agreement." [*See* Doc. #7-2, at 63-64.] CBRE conceded at oral argument that they were not in possession of a signed agreement. Further, in a deposition excerpt submitted by counsel for Plaintiff Lenders after the hearing, Ron Neyhar, CBRE's managing director for valuation and advisory services, admitted that CBRE never received a signed agreement from Berman. [*See* Neyhar Dep., Doc. # 19-1, at 12:3–9.]

In addition, immediately following the provision demanding receipt of the "signed agreement," the Appraisal Agreement stated that portions of the documents were "subject to modification" if the proposal were not accepted within two business days. [*Id.* at 63.] This provision, when read in conjunction with the statement that the appraisal would begin when a signed agreement was received, further indicates that the only means of accepting the Appraisal Agreement, and accordingly the arbitration clause, was for Berman to sign. At best, the provisions collectively create an ambiguity that this Court must construe against CBRE. *See Wood-Hopkins Contracting Co.*, 202 S.E.2d at 476.

Second, CBRE has discussed at length whether Plaintiff Lenders can be bound to the arbitration clause as third-party beneficiaries to its Appraisal Agreement with Berman.[5] However,

---

[5] CBRE seems to be assuming that because Plaintiff Lenders have referred to themselves as third-party beneficiaries of a contract between CBRE and Berman, they are doing so in reliance on the Appraisal Agreement. CBRE further attempts to use this supposed reliance to estopp Plaintiff Lenders from challenging the validity and enforcement of the Appraisal Agreement and its arbitration clause as between CBRE and Berman. However, during oral argument, counsel for Plaintiff Lenders explained to the Court that Plaintiff Lenders were relying on an "amorphous" agreement between CBRE and Berman, and counsel expressly disavowed that Plaintiff Lenders were relying on the Appraisal Agreement for either their breach of contract or negligence claims. [*See also* Pls.' Mem. In Opp'n, Doc. #13, at 2-3 (explaining that Plaintiff Lenders doubt the enforceability of the Appraisal Agreement).] During oral arguments, CBRE appeared to question the validity of Plaintiff Lenders' status as third-party beneficiaries under any supposed "amorphous" agreement. However, at this stage,

7

their focus should be on the more important threshold inquiry in this case: whether the Appraisal Agreement, including its arbitration provision, constituted a valid agreement between CBRE and Berman. In fact, CBRE's only evidence on this issue appears to be an assertion that CBRE submitted an offer and that Berman accepted that offer by remitting payment and accepting services. [Def.'s Mot., Doc. #7-1, at 4-5; Def.'s Reply, Doc. #15, at 2-3.] However, in an affidavit submitted by CBRE, Mr. Neyhar does not discuss any action on the part of Berman that might constitute acceptance of the Appraisal Agreement. [Neyhar Aff., Doc. #7-2, at 1-3.][6] In the deposition excerpt provided by Plaintiff Lenders, Mr. Neyhar claims the *sole* basis for his belief that Berman accepted the agreement was that CBRE had, at some point in time, received the full retainer fee. [Neyhar Dep., Doc. # 19-1, at 11:23–25.] However, Mr. Neyhar tempers this belief by further explaining that "*typically* when a client pays, they agree to the terms and conditions." [*Id*. at 12:21–22 (emphasis added).]

CBRE offers no further explanation or evidence, and has provided no correspondence or other documentation from Berman, that indicates whether Berman manifested any intent to be bound by the Appraisal Agreement or the arbitration clause therein. In fact, CBRE has offered

---

it is not for the Court to decide whether such an agreement would be legally sufficient to confer upon Plaintiff Lenders third-party beneficiary status. *See Brad Ragan, Inc. V. Callicut Enter., Inc*., 326 S.E.2d 62, 65 (N.C. Ct. App. 1985) (ruling that complaint adequately stated a third-party beneficiary claim premised upon an express oral promise by defendant).

[6] Mr. Neyhar's affidavit offers the additional ambiguity of stating that the Appraisal Agreement shows the terms "agreed to by CBRE," as opposed to the terms agreed to by Berman. [Neyhar Aff., Doc. #7-2, at ¶4.] The affidavit also references the complete appraisal as Exhibit A, and the Appraisal Agreement as Exhibit B, although as counsel for CBRE explained at oral argument, these attachments are actually labeled Exhibit A-1 and Exhibit A-2 respectively. [*Id*. at ¶3-4.]

8

no proof that anyone at Berman ever even received the Appraisal Agreement.[7] Accordingly, even if this Court were to ignore the language in the Appraisal Agreement requiring acceptance by signature, there is no indication from the record that any payment was made *in response* to the Appraisal Agreement.

Third, CBRE has not indicated that any payment from Berman was received within two business days from the date of the Appraisal Agreement. If a payment were made by Berman more than two business days *after* the date of the Appraisal Agreement, then under the agreement's terms CBRE would have been free to modify the Appraisal Agreement's contents. [*See* Doc. #7-2, at 63.] Therefore, if Berman's payment could have otherwise constituted acceptance of the arbitration clause, any such payment received more than two business days after the date of the Appraisal Agreement would have given CBRE the unilateral ability to modify the agreement. This would render the arbitration clause illusory and unenforceable.[8] *See Bowman v.*

---

[7] The Appraisal Agreement in the record is a copy provided by CBRE. [Neyhar Aff., Doc. #7-2, at 4.] The record is devoid of any evidence that Berman received this agreement. While this Court can assume that Mr. Neyhar was correct in his deposition that Berman remitted payment, there is no indication of whether Berman remitted payment after receiving the Appraisal Agreement, or whether Berman remitted payment in response to some other correspondence such as a bill or a telephone call.

[8] This Court is aware that the arbitration clause was included in the Terms and Conditions section beginning on page three of the Appraisal Agreement; and the two-day acceptance provision was contained within a box highlighting "proposal specifications," and gave CBRE the authority to modify "[t]hese specifications." [*See* Doc. #7-2, at 63.] However, the term "specifications" is defined nowhere in the Appraisal Agreement, and the next page of the document stated that the Terms and Conditions, which included the arbitration clause, "are deemed a part of this agreement as though set forth in full herein." [*Id.* at 64.] In construing this ambiguity against CBRE, the Court finds that the modification provision could have allowed CBRE to modify the Terms and Conditions if the Appraisal Agreement were not accepted within two business days. *See Wood-Hopkins Contracting Co.*, 202 S.E.2d at 476.

9

*Hill*, 262 S.E.2d 376, 377 (N.C. Ct. App. 1980) ("An apparent promise which, according to its terms, makes performance optional with the promisor . . . is in fact no promise." ).

Given the Appraisal Agreement's express signature requirement, coupled with the lack of evidence concerning whether Berman intended to be bound to its terms, CBRE has not made a *prima facie* showing that a valid arbitration agreement existed between Berman and CBRE under North Carolina law. It logically follows that Plaintiff Lenders, as nonsignatories who are not directly referenced in the Appraisal Agreement, cannot be bound to the arbitration clause when it is unenforceable in the first instance as between Berman and CBRE. *See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000) (holding that arbitration is a matter of contract and a party cannot be required to submit to arbitration when it has not agreed to arbitrate); *see also* 9 U.S.C. § 4 (providing that before a federal court may order arbitration it must be "satisfied that the making of the agreement for arbitration . . . is not in issue").

### **Conclusion**

Given this Court's findings, CBRE's Motion to Stay Proceedings and Compel Arbitration is denied without prejudice. Should Plaintiff Lenders later argue that the Appraisal Agreement is the contract from which they derive their purported third-party beneficiary status, or should Plaintiff Lenders later argue that CBRE's tort duty stemmed directly from the Appraisal Agreement, then CBRE may re-file its Motion to Stay Proceedings and Compel Arbitration. *See Int'l Paper Co.,* 206 F.3d at 418 ("[A] party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him.")

10

Based on the foregoing, the Defendant CBRE's Motion to Stay Proceedings and Compel Arbitration is **DENIED** *without prejudice*.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell<br>
R. Bryan Harwell<br>
United States District Judge

Florence, South Carolina
December 28, 2011