IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Michael I. Goldberg in his capacity as Receiver for M.A.M.C., Incorporated, as Servicing Agent and attorney in fact for the following lenders: Coconut Grove Bank, as custodian of the Forrest Rhea Nichols IRA, as to an undivided 1.308% interest, *et al.*, and Green-East SC Lender, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> C.B. Richard Ellis, Inc. d/b/a CBRE Valuation & Advisory Services, <br><br> Defendant. | Civil Action No.: 4:11-cv-02237-RBH <br><br><br><br><br><br><br><br> **ORDER** |

This lawsuit arises from a dispute between the Plaintiffs, Michael I. Goldberg in his capacity as receiver, servicing agent, and attorney for various lenders ("Plaintiff Lenders"), and the Defendant, CBRE Valuation & Advisory Services ("CBRE"), regrading an appraisal performed by CBRE. Currently pending before the Court is CBRE's Renewed Motion to Stay Proceedings and Compel Arbitration. [Doc. # 89.] For the following reasons, the Motion is granted.[1]

**Background Facts and Procedural History**

In July 2005, two companies that are not parties to this lawsuit, Atlantic Beach Oceanfront, LLC ("ABO") and Seventh Street Properties, LLC ("Seventh Street"), purchased property in Horry County, South Carolina ("the Property") via financing. Sometime after purchasing the Property,

---

[1] Under Local Rule 7.08, "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." The issues have been briefed by the parties, and the Court believes a hearing is not necessary.

ABO and Seventh Street contacted The Berman Group ("Berman"),[2] a company based out of Coconut Grove, Florida, for assistance in refinancing loans on the Property.

Berman, in turn, hired CBRE to prepare an appraisal of the property. Sometime in February 2006, CBRE sent an Appraisal Agreement to Berman. The Terms and Conditions of the Appraisal Agreement contained the following arbitration clause:

> In the event of any dispute between Client and Appraiser relating to this Agreement, or Appraiser's or Client's performance hereunder, Appraiser and Client agree that such dispute shall be resolved by means of binding arbitration in accordance with the commercial arbitration rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court of competent jurisdiction. Depositions may be taken and other discovery obtained during such arbitration proceedings to the same extent as authorized in civil judicial proceedings in the state where the office of Appraiser executing this Agreement is located. The arbitrator(s) shall be limited to awarding compensatory damages and shall have no authority to award punitive, exemplary or similar type damages. The prevailing party in the arbitration proceeding shall be entitled to recover from the losing party its expenses, including the costs of arbitration proceeding, and reasonable attorney's fees.

[*See* Appraisal Agreement, Doc. # 89-1, at 7.]

Plaintiff Lenders allege they loaned money to ABO and Seventh Street on the basis of the CBRE appraisal commissioned by Berman. On July 19, 2011, after ABO and Seventh Street subsequently defaulted on their loans, Plaintiff Lenders filed a complaint in South Carolina circuit court. Subsequently, CBRE removed the case to this Court, and Plaintiff Lenders filed an amended complaint. The gravamen of Plaintiff Lenders' case is that (1) CBRE was negligent by providing an erroneous and inaccurate appraisal to Berman on which it knew lenders would rely, and that

---

[2] Plaintiff identifies "Berman" as the Berman Mortgage Company, while Defendant and the Appraisal Agreement identifies "Berman" as The Berman Group.

(2) CBRE breached its contract with Berman to provide an appraisal for the benefit of Plaintiff Lenders, who were third-party beneficiaries.

On August 23, 2011, CBRE filed its Initial Motion to Compel Arbitration. [*See* Initial Mot. to Compel, Doc. # 7.] On December 28, 2011, after a hearing on the matter, this Court denied CBRE's Initial Motion to Compel *without prejudice*. [*See* Order on Initial Mot. to Compel, Doc. # 20.] The Court's holding focused primarily on the fact that no representative from Berman signed the Appraisal Agreement and there was no evidence that Berman remitted payment in response to the Appraisal Agreement. [*Id*.] Particularly, throughout their briefings and in the hearing, Plaintiff Lenders made much of the fact that the Appraisal Agreement was unsigned by Berman. Moreover, Berman representative Keith Novak submitted a sworn Affidavit that the Appraisal Agreement "was never signed by anyone on behalf of Berman, and Berman never agreed to its terms and conditions." [*See* Novak Aff., Doc. #23-1, at ¶ 8.]

However, during a June 2012 search of a warehouse where certain records pertinent to this case had been stored, attorneys for CBRE discovered a file maintained by an accounting firm employed by Plaintiff Lenders' Receiver marked "BMC C+F 2006." [*See* Munson Aff., Doc. # 89-1, at ¶¶ 5–12; Resp., Doc. # 91, at 1–2.] The entire contents of the 2006 folder included correspondence transmitting the Appraisal Agreement to Mr. Novak, the fully executed five-page Appraisal Agreement bearing the signature of Mr. Novak, a check ledger entry for $7,000 related to "Appraisal Agreement – Atlantic Beach Oceanfront Dev.," and a copy of the check in which the loan borrowers' representative reimbursed Berman Mortgage for the $7,000 "CBRE Appraisal fee." [*See* CBRE File, Doc. # 89-1, at 4–11.] Plaintiff Lenders concede that the signature on the Appraisal Agreement is that of Mr. Novak, though they claim he has no

recollection of signing it,[3] and has no recollection of what he did with it after signing it. [Resp., Doc. # 91, at 2.]

In light of this discovery, CBRE filed the Renewed Motion to Compel Arbitration at issue claiming that the Federal Arbitration Act ("FAA") compels arbitration in this case because the Appraisal Agreement constituted a valid contract between CBRE and Berman, and that Plaintiff Lenders, as alleged third-party beneficiaries of the Agreement, are bound to its terms, including its arbitration clause.

## **Legal Standard**

The FAA created a body of federal substantive law applicable in state and federal courts.[4] *Southland Corp. v. Keating*, 465 U.S. 1, 12 (1984) (rejecting the view that state law could bar enforcement of the FAA); *see also* 9 U.S.C. § 1. The Supreme Court has repeatedly

---

[3] This Court understands that Plaintiffs' counsel claims that Berman representative Keith Novak's failure to recall signing the Appraisal Agreement was not a result of improper motive, but was instead due to his lack of familiarity with Berman's business. [Resp., Doc. # 91, at 2.] However, it troubles this Court that Mr. Novak was nonetheless willing to swear under oath that he was "[f]amiliar" with "this litigation" and that "[t]he proposal was never signed by anyone on behalf of Berman . . . ." [*See* Novak Aff., Doc. #23-1, at ¶¶ 3, 8.] Yet Plaintiff Lenders still rely on Mr. Novak's assertions surrounding the Appraisal Agreement given his professed lack of familiarity, most notably his inability to recall "what, if anything, he did with the [Agreement] after signing it." [Resp. Doc. # 91, at 2.]  It further troubles the Court that in December 2011, while Plaintiff Lenders argued vehemently against arbitration on the basis that there was no signed agreement, a fully signed Agreement, communications regarding the Agreement, and payment information sat in a file over which Plaintiff Lenders' Receiver had ultimate control. This litigation has been contentious and involves allegations by Plaintiff Lenders seeking millions of dollars; it is difficult to understand why these documents have only now surfaced when they have long been in the possession of the Receiver.

[4] Application of the FAA requires demonstration of four elements: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute. *Rota-McLarty v. Santander Consumer USA, Inc*., --- F.3d ----, 2012 WL 5936033, at *8 n.6 (4th Cir. Nov. 28, 2012) (citing *Whiteside v. Teltech Corp*., 940 F.2d 99, 102 (4th Cir. 1991)). Only the second element is in dispute here.

emphasized that the FAA represents "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Pursuant to that liberal policy, "any doubts concerning the scope of arbitrable issues should be resolved *in favor of arbitration*, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25 (emphasis added); *see also Hill v. PeopleSoft USA, Inc*., 412 F.3d 540, 543 (4th Cir. 2005) (instructing that district courts should "resolve 'any doubts concerning the scope of arbitrable issues in favor of arbitration'").

Section 2 of the FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Am. General Life and Acc. Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (quoting 9 U.S.C. § 2). Thus, although federal law governs the arbitrability of disputes, ordinary state-law principles[5] resolve issues regarding the enforceability of an arbitration clause. *Id.*; *see also Matterhorn, Inc. v. NCR Corp*., 763 F.2d 866, 868 (7th Cir. 1985) (explaining that a challenge based on fraud in the inducement of the whole contract

---

[5] A federal court sitting in diversity must apply the conflict of law provisions of the forum state. *Thornton v. Cessna Aircraft Co.*, 886 F.2d 85, 87 (4th Cir. 1989). Under South Carolina choice of law rules governing contract actions, a contract is governed by the laws of the state in which the contract was made. *Livingston v. Atl. Coast Line R. Co.*, 176 S.C. 385, 391 (1935). Here, both parties agree that North Carolina law governs the contract at issue. [*See* Resp., Doc. # 6, at 6; Reply, Doc. # 95, at 6.] The parties have also previously agreed in their prior memoranda and at the time of oral argument on CBRE's Initial Motion to Compel Arbitration, that North Carolina law governs the contract issues. In addition, the Terms and Conditions appended to the Proposal provide as follows: "The Agreement shall be governed by the laws of the state of the CB Richard Ellis, Inc. office shown on the Agreement." [Doc. # 89-1, at 7.] The office shown in the Appraisal Agreement was Charlotte, North Carolina.

should be decided by an arbitrator, while a challenge based on the lack of mutuality of the arbitration clause itself would be appropriate for judicial determination).

Just a month ago, the U.S. Supreme Court, in a per curiam opinion, reiterated the federal policy favoring arbitration, and distinguished between using state law to attack the arbitration clause itself, and using state law to attack the contract as a whole. *See Nitro-Lift Techs, L.L.C. v. Howard*, 133 S.Ct. 500 (2012). In that case, the Court vacated a decision of the Oklahoma Supreme Court, which held that the "existence of an arbitration agreement in . . . [a] contract does not prohibit judicial review of the underlying agreement." *Id*. In vacating and remanding, the U.S. Supreme Court explained as follows:

> [W]hen parties commit to arbitrate contractual disputes, it is a mainstay of the Act's substantive law that attacks on the validity of the contract, as distinct from attacks on the validity of the arbitration clause itself, are to be resolved by the arbitrator in the first instance, not by a federal or state court. For these purposes, an arbitration provision is severable from the remainder of the contract, and its validity is subject to initial court determination; but the validity of the remainder of the contract (if the arbitration provision is valid) is for the arbitrator to decide.

*Id*. (internal citations and quotation marks omitted).

## **Discussion**

Mindful of the "liberal federal policy favoring arbitration agreements," and the Supreme Court's most recent pronouncement that "substantive law that attacks on the validity of the contract . . . are to be resolved by the arbitrator in the first instance," this Court finds that this dispute is subject to arbitration. *See Howard*, 133 S.Ct. at 500; *Moses H. Cone*, 460 U.S. at 24-25.

First, pursuant to the undisputed and newly uncovered documentation, an arbitration provision was included in the written Appraisal Agreement,[6] which was signed by a representative from CBRE and by Mr. Novack on behalf of Berman. [*See* Resp., Doc. # 91, at 1–3; Appraisal Agreement, Doc. # 89-1, at 5–9.] *See also* 9 U.S.C. § 3 (requiring "an agreement in writing" for arbitration to proceed).

---

[6] The fully signed Appraisal Agreement, which was only recently uncovered, is dated February 15, 2006, but was signed by Keith Novak on behalf of Berman on February 23, 2006. [Appraisal Agreement, Doc. # 89-1, at 5.] The Appraisal Agreement was also found in the same folder with an email dated February 23, 2009, which referenced attaching an appraisal agreement. [Appraisal Agreement Email, Doc. # 89-1, at 4; Munson Aff., Doc. # 89-1, at ¶¶ 5–12.] Information regarding a $7,000 payment pursuant to the Appraisal Agreement was also located in the file. [*See* CBRE File, Doc. # 89-1, at 4–11.] According to CBRE, the Appraisal Agreement at issue was sent as an attachment to the February 23, 2009, email, though the Agreement inadvertently bore an earlier date. [Reply, Doc. # 95, at 10.]

Plaintiff Lenders, however, seem to argue that the agreement referenced in the email could be a different document than the Appraisal Agreement uncovered alongside the email. [Resp., Doc. # 91, at 4, 9.] This appears to be an argument that some later or revised contract, which has never been disclosed and the existence of which is speculative, may have somehow modified the Appraisal Agreement at issue. As this appears to be an attack on the entire Appraisal Agreement at issue, and not the Agreement's arbitration provision, it is not for this Court to address in the first instance. *Howard*, 133 S.Ct. at 500. To the extent this Court construes Plaintiff Lenders' supposition as an attack on the arbitration provision itself, the argument fails on its merits. One, Plaintiff Lenders concede that Mr. Novak, the witness on which Plaintiffs rely for details surrounding the formation of the Appraisal Agreement, does not recall receiving the Agreement, signing the Agreement, or virtually any other circumstances surrounding the execution of the Agreement. [Resp., Doc. # 91, at 2.] The only agreement in the record is the Appraisal Agreement at issue, which Mr. Novack dated February 23, 2009, and signed on behalf of Berman. Two, at best Plaintiff Lenders have attempted to create doubt as to whether some later or revised agreement, which has never been uncovered, impacted the arbitrability of the Appraisal Agreement at issue. However, in addition to the strong federal policy favoring arbitration, the Fourth Circuit has explained that under North Carolina law, which the parties agree governs the state-law issues in this case, "there is a strong public policy favoring arbitration which resolves doubt concerning the existence of an arbitration agreement in favor of arbitration." *Habitat Architectural Group, P.A. v. Capitol Lodging Corp.*, 28 Fed. App'x 242. 246 (4th Cir. 2002) (citing *Martin v. Vance*, 514 S.E.2d 306, 309 (N.C. Ct. App. 1999)).

Second, Plaintiff Lenders' argument that under North Carolina law there is no "meeting of the minds," and thus, no written agreement, is unavailing. Plaintiff Lenders are attempting to do what the Supreme Court has very recently, and forcefully, reminded cannot be done: avoid arbitration by challenging the validity of the contract as a whole. *See Howard*, 133 S.Ct. at 500.

Plaintiff Lenders argue (1) acceptance was lacking under North Carolina law because the Appraisal Agreement and follow-up communication supposedly required not just Berman's signature, but also for Berman to remit a signed Appraisal Agreement to Berman; and (2) the Appraisal Agreement was illusory under North Carolina law because it allowed certain specification to be subject to modification within two days from the date the Agreement was mailed. [Resp., Doc. # 91, at 7–12.] Clearly, these arguments focus on the validity of the underlying Appraisal Agreement. However, "substantive law that attacks on the validity of the contract . . . are to be resolved by the arbitrator in the first instance, not by a federal or state court." *Howard*, 133 S.Ct. at 500; *see also Preston v. Ferrer*, 552 U.S. 346, 349 (2008); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967). "For these purposes, an arbitration provision is severable from the remainder of the contract." *Id.* Plaintiff Lenders do not attack the arbitration provision itself, which was in a writing signed by representatives from both CBRE and Berman.[7] For example, nowhere do Plaintiff Lenders argue that the arbitration

---

[7] At most, Plaintiff Lenders have made an argument that the Appraisal Agreement was not a valid contract. However, as noted above, this argument is to be decided in the first instance by the arbitrator. *Howard*, 133 S.Ct. at 500. Nonetheless, to the extent Plaintiff Lenders' arguments can somehow be read as an attack that there was no "meeting of the minds" as to the arbitration clause itself, the newly uncovered documents indicate Berman and CBRE manifested mutual assent to the arbitration provision, if not the entire Arbitration Agreement, under North Carolina law. Berman signed the Appraisal Agreement, which was silent as to how acceptance should be communicated, and issued a check in the exact amount specified in

8

provision itself was unconscionable, the product of fraud, or not in a writing signed by the parties. [*See id.*]

Numerous other courts, to include the Fourth Circuit, have enforced arbitration clauses where, as here, the opposing party attacked only the underlying agreement and did not specifically point to an error with the arbitration provision itself. *See, e.g.*, *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 628 (6th Cir. 2004) (holding that under Supreme Court precedent, a "general arbitration clause is enforceable even if it is contained in a contract that is generally asserted to be voidable, unless the basis for rescission applies specifically to the

---

the Appraisal Agreement to CBRE for "Appraisal Agreement-Atlantic Beach Oceanfront Dev." within a day of signing. [*See* Appraisal Agreement, Doc. # 89-1, at 5–9; Berman Check, Doc. # 89-1, at 10.] CBRE's accounting ledger shows that the check was deposited three business days later. [CBRE Ledger, Doc. # 91-2, at 1.] *See also Chaisson v. Simpson*, 673 S.E.2d 149, 159 (N.C. Ct. App. 2009) (holding that in the formation of a contract, an offer and an acceptance are essential elements and constitute the agreement of the parties).

Plaintiff Lenders also appear to attack as illusory the Appraisal Agreement provision which claimed the proposal specifications were subject to modification if the Appraisal Agreement were not accepted within two business days. [Appraisal Agreement, Doc. # 89-1, at 5.] Again, Plaintiff Lenders make no argument that the arbitration provision itself was illusory, and to the extent this Court can glean such an argument by way of Plaintiff Lenders' attack on the Arbitration Agreement itself, it fails. Under North Carolina law, an offer may be withdrawn or modified at any time before acceptance. *McLamb v. T.P. Inc.*, 619 S.E.2d 577, 592 (N.C. Ct. App. 2005). However, "while the offer is still outstanding, the offeree can accept it by meeting its conditions." *White v. Hugh Chatham Mem. Hosp., Inc.*, 387 S.E.2d 80, 81 (N.C. Ct. App. 1990). The provision at issue allowed CBRE to modify the specifications of its offer if it was not accepted in two days. However, after two days Berman was still free to accept the original offer until it had been revoked or modified. *See Winrow v. Discovery Ins. Co.*, 657 S.E.2d 447 (N.C. Ct. App. 2008) (relying on several North Carolina cases in explaining that an offeree may accept an offer until it is revoked, and that such revocation must be communicated to the offeree to effectively terminate the offeree's power to accept). Although this Court noted in its previous Order that the provision at issue could possibly be read as illusory under certain conditions, the uncovered documents and the relevant North Carolina legal authority on point indicate a contrary result. As discussed, Berman signed the Appraisal Agreement through Mr. Novack, remitted payment in the exact amount called for in the Appraisal Agreement, and accepted the services of CBRE as called for in the Appraisal Agreement.

arbitration clause"); *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 170 (2d Cir. 2004) (refusing to consider a contract of adhesion claim that did not apply to "the arbitration clause alone"); *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 472–73 (5th Cir. 2002) (holding that the arbitrator is to decide a mental capacity defense that does not specifically relate to the arbitration agreement); *Jeske v. Brooks*, 875 F.2d 71, 75 (4th Cir. 1989) (holding that unconscionability and lack-of-consideration defenses challenging the entire contract, rather than the arbitration clause itself, are for the arbitrator to decide); *Unionmutual Stock Life Ins. Co. v. Beneficial Life Ins. Co.*, 774 F.2d 524, 529 (1st Cir. 1985) (same with mutual mistake and frustration of purpose); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 637 F.2d 391, 398 (5th Cir. 1981) (same with duress and unconscionability); *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1271 (7th Cir. 1976) (same with frustration of performance).

Third, because there is an enforceable arbitration clause as between CBRE and Berman, it logically follows that all Plaintiff Lenders' claims are subject to arbitration.

The arbitration provision at issue requires arbitration "[i]n the event of *any dispute* between [the parties] *relating to this Agreement*, or . . . [CBRE's] performance hereunder . . . ." [*See* Appraisal Agreement, Doc. # 89-1, at 7 (emphasis added).] Plaintiff Lenders spend a considerable amount of time arguing that they were third-party beneficiaries of Berman, a party to the Appraisal Agreement. As the Fourth Circuit has held, "[w]ell-established common law principles dictate that in an appropriate case a nonsignatory can enforce, *or be bound by*, an arbitration provision within a contract executed by other parties." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416–17 (4th Cir. 2000) (holding also that a nonsignatory is estopped from refusing to comply with an arbitration clause when

it receives a "direct benefit" from a contract containing an arbitration clause). In fact, Plaintiff Lenders themselves frame the issue for purposes of this Motion as follows: "[t]he critical inquiry is whether Berman – and by extension Plaintiffs – entered into a contract to arbitrate with CBRE . . . ." [Resp. Doc. # 91, at 6.]

Plaintiff Lenders attempt to argue that they are bringing claims not predicated upon the Appraisal Agreement, namely that they are third-party beneficiaries to some "amorphous" implied contract with CBRE, and that they have negligence claims against CBRE. [Resp., Doc. # 12–14.] Here, as a party who purports to be an intended beneficiary of Berman, and who thus attempts to benefit from the appraisal performed under the Appraisal Agreement,[8] Plaintiff Lenders' claims relating to CBRE's performance of the appraisal can reasonably be couched as disputes "relating to" the Appraisal Agreement. More importantly, in relying on Supreme Court authority, the Fourth Circuit has flatly held "we may not deny a party's request to arbitrate an issue 'unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001) (emphasis added) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)). Certainly, the Court cannot say "with positive assurance" that the arbitration provision does not cover Plaintiff Lenders' claims, and thus Plaintiff Lenders' claims are subject to arbitration. *See Moses H. Cone*, 460 U.S. at 24–25 ("[A]ny

---

[8] As an example of Plaintiff Lenders attempting to benefit from the Appraisal Agreement, the expert retained by Plaintiff Lenders expressly relies on Paragraph 18 of the Terms and Conditions of the Appraisal Agreement to conclude that CBRE's appraisal report failed to meet the applicable standard of care. [Expert Report, Doc. #93-1, at 5.]

11

doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . .").

## Conclusion

Based on the foregoing, **IT IS THEREFORE ORDERED** that Defendant CBRE's Renewed Motion to Stay Proceedings and Compel Arbitration [Doc. # 89] is **GRANTED**, and the parties are ordered to submit the underlying claims to arbitration in accordance with the arbitration provision of the Appraisal Agreement.

**IT IS FURTHER ORDERED** that the case is hereby stayed until July 1, 2013, by which time the parties shall complete arbitration.[9] The parties shall make a filing on the docket immediately upon the conclusion of arbitration.

**IT IS ALSO ORDERED** that all pending motions are **DENIED** as moot.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell<br>
R. Bryan Harwell<br>
United States District Judge

Florence, South Carolina  
December 14, 2012

---

[9] The parties in this case have already conducted a great deal of discovery and should be well prepared for arbitration. Additionally, this deadline will ensure that the parties are diligent in timely completing arbitration.